**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3561
_____

UNITED STATES OF AMERICA

v.

KENNETH HAMPTON,
                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-15-cr-00302-001
District Judge:  The Honorable Gerald J. Pappert

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 3, 2019

Before: SMITH, *Chief Judge*, JORDAN, and MATEY, *Circuit Judges*

(Filed: June 18, 2019)
_____

OPINION[*]
_____

SMITH, *Chief Judge*.

A jury convicted Kenneth Hampton of twenty counts of conspiracy, wire fraud, and

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

aggravated identity theft for his role in a conspiracy to fraudulently obtain and then sell houses in Philadelphia, Pennsylvania. The District Court sentenced Hampton to 200 months of incarceration, applying, *inter alia*, a four-level enhancement under § 3B1.1(a) of the United States Sentencing Guidelines for Hampton's aggravating role in the offense. On appeal, Hampton challenges two aspects of his sentence: the District Court's decision to impose the aggravating role enhancement, and the disparity between his sentence and a lesser sentence imposed on one of his coconspirators. Neither contention has merit; we will therefore affirm.

## I.

From May 2007 to October 2014, Hampton was the ringleader of a conspiracy to steal, encumber, and sell real property in Philadelphia. Along with his son, Terrell Hampton; his brother, Ellis Hampton; and his then-fiancée, Roxanne Mason, Hampton located seemingly vacant property and filed fraudulent deeds purportedly signed by the property owners to obtain apparent title to the property. The conspirators avoided real estate transfer taxes by claiming the houses had been transferred to them by relatives. The conspirators turned a profit by seeking mortgages, obtaining government assistance, soliciting private investments, and selling the houses to unsuspecting buyers. Throughout much of the conspiracy, Hampton was serving a lengthy federal prison sentence for counterfeiting. *See United States v. Hampton*, 444 F. App'x 583, 585–86 (3d Cir. 2011). Notwithstanding his incarceration, Hampton was indefatigable, leading the conspiracy through email and telephone communications.

2

Hampton's ingenuity became his downfall after law enforcement discovered his jailhouse communications with his coconspirators. The government charged Hampton in the operative second superseding indictment with twenty counts: one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371; seventeen counts of wire fraud and attempted wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). After a seven-day trial, a jury convicted Hampton of all counts.

At sentencing, the District Court calculated Hampton's total offense level of 27 and criminal history category of VI for an advisory Guidelines range of 154 to 210 months.[1] As part of its calculation, the Court applied several enhancements including, as relevant here, a four-level enhancement under § 3B1.1(a) for Hampton's role in the offense. The District Court imposed a total prison sentence of 200 months, with 3 years of supervised release to follow.

Hampton timely appealed.[2]

**II.**

Hampton raises two issues on appeal: whether his four-level aggravating role enhancement under Guidelines § 3B1.1(a) is procedurally reasonable, and whether his 200-

---

[1] Hampton's Guidelines range was 130 to 162 months, but the District Court increased the range to 154 to 210 months to account for a mandatory 24-month consecutive sentence resulting from Hampton's aggravated identity theft convictions.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

month sentence is substantively reasonable given that one of his coconspirators received a sentence of 24 months and 1 day.

**A.**

Hampton first argues that his four-level enhancement under § 3B1.1(a) is procedurally unreasonable. We review the District Court's application of § 3B1.1 for clear error. *United States v. Huynh*, 884 F.3d 160, 165 (3d Cir. 2018). Section 3B1.1(a) provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S. Sentencing Guidelines Manual § 3B1.1(a) (U.S. Sentencing Comm'n 2016). Hampton's argument is twofold—that he is not an "organizer" or "leader" for purposes of § 3B1.1(a), and that the conspiracy lacked five or more participants.

As to the first of these contentions—that Hampton does not qualify as an organizer or a leader—we review for plain error because Hampton failed to object on these grounds at sentencing. *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc). To assess whether a defendant is an organizer or leader, the District Court should consider (1) "the exercise of decision making authority," (2) "the nature of participation in the commission of the offense," (3) "the recruitment of accomplices," (4) "the claimed right to a larger share of the fruits of the crime," (5) "the degree of participation in planning or organizing the offense," (6) "the nature and scope of the illegal activity," and (7) "the degree of control and authority exercised over others." U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.4 (U.S. Sentencing Comm'n 2016). For a defendant to be considered an

4

organizer or leader, he "must have exercised some degree of control over others in the commission of the offense." *Huynh*, 884 F.3d at 170.

The District Court made ample findings regarding Hampton's exercise of authority and control, extensive participation in the conspiracy, and recruitment of accomplices. *See, e.g.*, App. 179–80 ("Mr. Hampton was, without question, the architect, the director, the leader of this criminal conspiracy. He truly was the brains of the operation."). The Court found that the evidence "demonstrated beyond a reasonable doubt that Mr. Hampton was the leader of the conspiracy and the mastermind behind all of the means used to effectuate the scheme." *Id.* at 123. Hampton does not dispute any of these findings on appeal. The District Court thus did not plainly err in ruling that Hampton was an organizer or leader under § 3B1.1(a).

Hampton's properly preserved argument—that the conspiracy did not involve five or more participants—is also unconvincing. A participant "need not have been convicted"; rather, "[a] 'participant' is a person who is criminally responsible for the commission of the offense." U.S. Sentencing Guidelines Manual § 3B1.1(a) cmt. n.1 (U.S. Sentencing Comm'n 2016). The District Court found that Hampton, his son Terrell, his brother Ellis, his fiancée Mason, and an unindicted coconspirator, Myra Walker, were all "participants" within the meaning of § 3B1.1(a). As to Walker, the District Court agreed with the government that she was extensively involved "in carrying out aspects of the scheme at . . . Hampton's behest." App. 140. The government recounted evidence adduced at trial that Walker had served as a straw purchaser, permitting Hampton to use her as an

5

intermediary to disguise his actual control of the fraudulent house purchases. Walker also told Hampton about several houses that were available for the conspirators to steal. As such, the District Court did not clearly err by concluding that Walker was a "participant" within the meaning of § 3B1.1(a). The District Court properly applied the four-level enhancement for Hampton's role in the offense.

## B.

Hampton also contends that his sentence is substantively unreasonable because he received a 200-month sentence whereas Mason, who pleaded guilty to essentially the same conduct, received a sentence of 24 months and 1 day. We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "Our substantive review requires us not to focus on one or two factors, but on the totality of the circumstances." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). So long as the District Court's decision "is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568. "It will be a rare case when it is clear that no acceptable reasoning can justify a given sentence." *Id.* at 573.

At base, Hampton disagrees with the District Court's assessment of 18 U.S.C. § 3553(a)(6), which addresses "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." "For a sentence to be reasonable," the District Court must give "meaningful consideration to the

6

§ 3553(a) factors." *United States v. Parker*, 462 F.3d 273, 276 (3d Cir. 2006) (internal quotation marks omitted). "So long as factors considered by the sentencing court are not inconsistent with those listed in § 3553(a) and are logically applied to the defendant's circumstances, we afford deference to the court's broad discretion in imposing a sentence within a statutory range." *Id.* at 277. As to § 3553(a)(6), "a defendant cannot rely upon [the provision] to seek a reduced sentence designed to lessen disparity between co-defendants' sentences."[3] *Id.* This is because "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *Id.* Thus, Hampton cannot use § 3553(a)(6) to argue that his sentence should be the same as that of Mason.[4] *See id.*

The District Court's findings were more than adequate to support Hampton's sentence. The Court found that Hampton's 200-month sentence avoided unwarranted disparities among defendants with similar records because the government had conservatively calculated the loss amount. As such, the Court reasoned that "defendants

---

[3] Although district courts are not required "to consider sentencing disparity among co-defendants" under § 3553(a)(6), the provision "does not prohibit them from doing so." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

[4] Even if Hampton could rely upon § 3553(a)(6), he fails to acknowledge that he and Mason are not similarly situated defendants. *Parker*, 462 F.3d at 278 (Section "3553(a)(6) by its terms plainly applies only where co-defendants are similarly situated."). Hampton and Mason do not have "similar records," 18 U.S.C. § 3553(a)(6), and Hampton does not even mention the Guidelines range Mason faced at sentencing. Hampton was the organizer and leader of the criminal conspiracy and Mason was a mere participant. Moreover, Hampton elected to go to trial, whereas Mason pleaded guilty. Thus, even if § 3553(a)(6) supported Hampton's interpretation, we would decline to rule that Mason is a proper comparator.

with similar records who have been found guilty of similar conduct would likely be facing far similar guideline ranges." App. 186. In light of the District Court's robust factual findings, we conclude that the Court did not abuse its discretion by imposing a 200-month sentence.

## III.

For the reasons set forth above, we will affirm the District Court's judgment.